Our next case is John Ryan v. Secretary of Veterans Affairs, 2024-1814. Mr. Nowakrocki. May it please the Court. The VA premised its removal of John Ryan on just eight patient encounters. Just eight patient encounters over a 14-year career with the VA as a licensed social worker. Eight patient encounters compared to 14 years. Just eight patient encounters over the seven-year period that Mr. Ryan had direct responsibility for the care of Veteran 7918, we call him with all due respect since it's private. Eight patient encounters in a seven-year period. How does that correspond to, and I don't know the details as well as you, there were 14 specifications in this case and six dealing with inappropriate conduct. Yes, and that arises from a total of eight patient encounters because there were multiple specifications from one patient encounter. Okay, so what is the point of your argument that he? That it goes to the reasonableness, that there was a lack of reasonableness in the VA's decision-making which is required under the substantial evidence prong that says you must have adequate evidence such as a reasonable mind would accept the conclusions of careless performance. So that combined with the fact that in these eight patient encounters, there is no evidence whatsoever from the first-line treaters in the PSTD clinic interdisciplinary team that Mr. Ryan engaged in careless performance or inappropriate conduct. But you want us to re-weigh the evidence. I don't, Your Honor. I understand that you're not allowed to do that, and I'm not asking you to re-weigh the evidence. What I'm asking you to do is look at the lack of evidence presented by the VA or that the VA's own evidence is contradictory, that a reasonable mind could not look at that evidence and say, yes, John Ryan engaged in careless performance. May I give an example? So in April of 2021, there was an interdisciplinary meeting. Mr. Ryan was not there. They were there to talk about pain management. The 14-21 encounter is referenced in the initial decision. In that note, the team says, mental health providers, MH providers assessed risk, continually assessed risk and determined no immediate intent. Yet in the same four months later, now all of a sudden the VA is contradicting itself and saying, yes, John Ryan failed to assess risk. But you understand what our job is up here, and there was a thorough analysis of walking through everything that was done and the credibility findings and the weight of the evidence as Judge Lori referred to. So how does one example that you pick, thinking that it should have been viewed another way, enough to dislodge the conclusion that was reached below? Because the conclusion has to be sufficient. I'm back to my reasonable mind standard. And I don't think that the MSPB erred in looking at that evidence because, again, it has substantial evidence by its very definition, is that which a reasonable mind might accept as adequate. And I don't see any analysis that a reasonable mind could look at that evidence and say, yes, careless performance. I know some of the specifications and analysis below were focused on the absence of, let's call it adequate records. The idea being that, first of all, an adequate record is important because continuity of care, if the caregiver changes, depends on the written record. And second, because of the background idea that the record is understood to accurately reflect what actually went on, so that if the record did not disclose a particular kind of suicide assessment, it is fair to infer that that assessment was not, in fact, done. That I think of as, I guess, one whole kind of side of the case, and then the other is what Mr. Ryan said or did not say about acupuncture. But just on the first part, why is there not substantial evidence for the board to have found that those charges of inadequate records, a problem for two reasons, that that was proved? Well, Mr. Repco did say that Mr. Ryan may have engaged in assessment, even though it's not documented. So in and of itself, I think in a clinical setting, yes, it's important. There's no doubt it's important to make proper documentation. But in a clinical setting, I don't know if you can put every single word that was spoken, and I think that's what the issue with this case is, is that they're trying to go into Mr. Ryan's personal private discussions with the veteran and say this did or did not happen. I think that's addressed, Your Honor, by the fact that Mr. Ryan is part of the interdisciplinary team, and they discuss these cases, and they ask him, John, please report on Veteran 7918, what's going on? And Mr. Ryan would make these verbal reports. So I think the fact that not everything may have not been in a patient encounter note does not reflect his work as a social worker, that he was assessing risk. The team depended upon him, not only on their encounter notes, but on his verbal reporting to the team. And I think that's an important distinction, is that it's not just documentation. And if it were documentation, then that's a totally different issue. That's failing to properly document as opposed to careless performance. The VA is saying John Ryan, after seven years, suddenly decided in 2020 and 2021 to stop caring for this veteran. That's what they're trying to assert. He stopped. After all those years of caring for this man, day in, day out, not day in, day out, but year after year after year, that suddenly he would abandon this veteran. And I think that's where a reasonable mind would say, how? What about the acupuncture-based piece of the case, which I think I'm, well, what I'm remembering. Yes, that was the inappropriate conduct. By basically misleading the veteran into thinking that he would be able to get, on the VA's dime, more acupuncture than the VA was going to give. And then experiencing disappointment when that turned out not to be true, and disappointment leading to at least some thoughts of suicide. Right, and I think that that's, you know, Mr. Ryan may have overstepped somewhat, but he could have been corrected. And he testified that he was meeting his standard of care as a social worker. I have to provide information to my clients about their options. And in some of his notes, he, in fact, does refer the veteran back to seek appropriate care. So I don't think that he was, I think it's a stretch to say, you need pain management, because pain management and pain was his number one risk for suicide. And so by John Ryan addressing intractable pain was not inappropriate conduct. It was addressing his main suicide risk. If I may, and I don't want to concede at all, and understand that we believe that there was not substantial evidence of careless performance or inappropriate conduct, but to the extent that the court would feel differently, then I'd like to turn to the Douglas factors. This court has said that the Douglas factors significant to the case must be reviewed thoroughly. And the standard, of course, is that the agency exercise management discretion within tolerable limits of reasonableness. So we're back to reasonableness. And in terms of Douglas factor number nine, I think it's clear that it's not mentioned in the decision below. There's no indication that Mr. Ryan, at any time, was ever told, John, you're increasing suicide risk. There was complete silence, complete silence from the VA, that he may have been doing something wrong for a year. So there was some evidence, the stay in your lane evidence, does that all have to do with the acupuncture? Yes. Okay. That was all inappropriate conduct. So I would ask the court to find a complete silence about the five patient encounters is not within the tolerable limits of reasonableness. Complete silence. How many other Douglas factors are there? You mentioned number nine, but there are 16 of them or 12 of them or something, I forget.  And quite a number of them point heavily in the other direction, correct? So what are we supposed to do with your argument now on factor number nine, which arguably is supported by substantial evidence, but even if you were correct, what are we supposed to do with that? Send it back for another analysis of the Douglas factor? Yes. The Douglas factors have to be subject to thorough analysis, because the record below, Dr. O'Connor did not discuss his documentation. Back to your point, Your Honor, Dr. Masnach did not discuss his alleged, quote, lack of documentation. They did not at all counsel him about failing to engage in assessment of suicide risk. And that's important because the Douglas factor says you must have clarity in the notice of the violation of rules or a warning. No notice, no warning. And I think this is even exacerbated further by the fact that the team itself, these are the frontline caretakers of Veterans 7, 9, 1, 8. They don't say a word to John Ryan about engaging in careless performance, and yet they're the ones who have the closest and the most contact, direct contact, as opposed to Dr. O'Connor and Dr. Masnach, who looked at records and looked at adages about what's in and what's not in a record. Would anybody but Mr. Ryan, as a matter of normal course, review his records? Yes. They were all subject to electronic signature by the PTSD clinic team. And, in fact, you could see on some of the exhibits it says, receive by, receive by, receive by. But is that just like a file clerk thing? It is now in the record. What I'm wondering about is whether inadequacies of the record would have been caught and therefore generated a, hey, you're not doing what you're supposed to. That is a kind of notice. Or whether that just isn't something that would, in the normal course, have been caught before. This is what, October of 2021? Is that when all of this got started? 2020-2021, yes. Well, the inadequacy of the record presupposes, again, that it didn't happen, and we're back to that adage. Why couldn't the VA have just said, John, have you been talking to this veteran? Did you do this? And the evidence is also there that, in fact, and this is an important part of the initial decision, as I said, Mr. Ryan didn't rebut any of these specifications. Well, that's just, that's not reasonable interpretation of the record, because he did. He said, I took part in suicide risk. I referred the veteran to the suicide hotline. I engaged in exposure therapy. So, to me, that's, I know you're saying, well, no, Jim, you're weighing the evidence, but it's the lack of evidence that detracts. Could the team have seen the notes? I think it was up to them. If they wanted to read it, they could read it. If they didn't want to read it, they didn't have to. But it's not where they were completely removed, that they were in a different building or in a different patient. They staffed veteran 7918 continually. And if someone had said, John, you're not doing this or that, this would have been the time to do it. Counsel, you're well into almost through your rebuttal time. Sorry, Your Honors. We'll give you three minutes for rebuttal. Let's hear from the government. Mr. Adelschreck.  Good morning, and may it please the Court. I'd like to start with eight patient encounters, an attempt, once again, to minimize the seriousness of this whole situation. Mr. Ryan's high-risk patient had a suicide plan to overdose on drugs and alcohol, and he had the means to carry it out with a stockpile of whiskey and thousands of pills. Every single one of those patient encounters with this veteran was critical. As a psychotherapist for this veteran, Mr. Ryan had to take required clinical steps that are undisputed here. For example, at every single encounter, he was required, and there's no dispute, he had to do a suicide assessment and provide lethal means counseling. There was a factual dispute before the Board, to be sure, about whether Mr. Ryan indeed performed those required clinical steps. But after weighing the evidence, as the trier of fact, the Board properly found that Mr. Ryan did not do so. And this came down to reviewing Mr. Ryan's own patient documentation. Counsel, let's talk a little bit about the Douglas factors. Sure. This is a 43-page opinion, very thorough on the actual facts. But it starts on the Douglas factors on appendix 41. It says the deciding official carefully looked at all the Douglas factors. And there are two pages there, but I don't see that they've gone through the individual Douglas factors, including number nine that opposing counsel has mentioned. Well, I'd address that on several levels, Your Honor. First of all, consistent with this Court's decision in Norris v. SEC, which we talk about in the red, the role of the Board is to make sure that there was a thorough consideration and balancing of all the Douglas factors. And there's no serious dispute that VA did, in fact, go through them one at a time and then balance them all together. And the Board properly, within the role that this Court has identified for it, determined that there was thorough consideration and balancing of all of those factors. By the agency or by the A.J.? By the agency, by the deciding official, Mr. Repco. But not so much by the A.J., which I guess I understand. Well, the administrative judge is not permitted to independently re-weigh them, consistent with the Board's role as identified by this Court in the Norris case. So there was a review. There's clearly on this record evidence as well as testimony from the deciding official that all of these Douglas factors were considered, including those in mitigation or that were favorable to Mr. Ryan, such as his 14 years of service. What do you make of the Factor 9 point, not as applied to the acupuncture, but as applied to the Charge No. 1? Sure. Well, the argument was that there was complete silence. Those were the words you heard from my colleague about notifying Mr. Ryan that he should stay in his lane. That silence, there was a lot of e-mails and meetings. There was not silence. We go through in the brief and marshal. I want to put aside, I thought the stay in the lane was about the acupuncture comments. I want to put that aside. What notice did he have that his assessments and or record keeping of assessments during his monthly meetings with the veteran were inadequate? Well, they didn't put him on a PIP, Your Honor, because of the seriousness of this matter. They decided to remove him upon determining that he was not performing required clinical steps. And there's no dispute that Mr. Ryan knew not only that he was supposed to be performing those required clinical steps, but he also knew that, I'll give Your Honor the citation. It's in the appendix at 1271 and 1341 and 42, Mr. Ryan's own testimony. He understood the adage that if it's not documented, it's like it never happened. And he admitted under oath that important things like this, suicide screenings, lethal means counseling, always, always had to be documented. So he had clear notice of what he was supposed to be doing, and he wasn't doing it. There is not a statute, regulation, or case that holds that an employer must stop an employee and notify them that their conduct is insufficient before removing them when that conduct is of sufficient gravity. And here, this could not be a more serious situation. It was within the province of the board to weigh the evidence, including the inferences to be drawn from the medical documentation that Mr. Ryan created. There could have been multiple reasonable inferences drawn under the circumstances. But the board had to resolve this question. Looking at the documentation itself, the context of that documentation in the medical field, where the documentation was crucial so that other practitioners within the VA could see what was going on with respect to a particular patient. And Mr. Ryan even trained others, if it isn't documented, it's like it never happened. He understood the seriousness of writing down what he did when it came to these required clinical steps. And it was more than fair for the board to infer from Mr. Ryan's own documentation that he wasn't doing those required steps. And as for Mr. Ryan's blanket assertion, I always did those things in every encounter, the board weighed that too, but said his assertions weren't specific to any one encounter. He didn't testify on encounter number one, I specifically recall discussing XYZ with the veteran. It wasn't specific. It was a blanket assertion. I did everything I was supposed to. Well, when you stack that up in context against what that documentation is supposed to represent in the medical field, it's a perfectly reasonable inference to be drawn that Mr. Ryan simply wasn't doing what was required. Mr. Ryan does not provide any basis for the court to disturb the board's fact-intensive decision. The court should affirm. Thank you. Thank you, counsel. Mr. Nowakowski has some rebuttal time. We'll give you two minutes. That's fine, Your Honor. Thank you. If we look at the standard applied to the Douglas considerations, it has to be within the tolerable limits of reasonableness. Tolerable limits of reasonableness. And counsel could not come up with any notice with regard to the careless performance of failure to assess suicide risk. And let's talk about the urgency. If the VA said, this man is putting a veteran's life at risk, we're not going to say anything to him? We're going to let him go on? Not only with Veteran 7918, but with 60 to 70 other veteran patients, and we're not going to say anything? That is not within the tolerable limits of reasonableness. I agree. They said stay in your lane. What does that mean? A lack of specificity, lack of clarity, as opposed to the one time that they did say to John Ryan, his supervisor said, John, quit sending out those articles. You're exceeding it. And John said, okay, I won't send out the articles that are outside of my social work context. Let me also mention just briefly the Douglas factors 4 and 10 with regard to rehabilitation, not considered thoroughly, that Mr. Ryan, when he was called out on things, said, okay, I'll stop sending out those articles. When Dr. Masnick said, go to training, John said, okay, I'll go to training. They thoroughly skipped the idea of whether someone who has been a social worker for 14 years could rehabilitate themselves. Also Douglas factor number 4 that talks about performance. In 2020, both Dr. O'Connor and Dr. Masnick rated John Ryan as fully successful. And yet they're trying to say, well, we're going to ignore that Douglas factor. In fact, the deciding official called it lackluster performance. Once again, your honors, I believe that there are sufficient grounds to rescind the notice of removal. I thank you. Thank you very much. Thank you to both counsel. The case is submitted.